## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

PLANNED PARENTHOOD GULF
COAST, INC., *et al*.,

    Plaintiffs,

       *v.*

REBEKAH GEE, in her official capacity as
Secretary of the Louisiana Department of
Health,

    Defendant.

No. 3:18-cv-00176-JWD-RLB

## MEMORANDUM IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS

Plaintiffs Planned Parenthood Gulf Coast, Inc. ("PPGC") and Planned Parenthood Center for Choice ("PPCfC") seek to halt the ongoing administrative process through which Defendant Louisiana Department of Hospitals ("Department") is assessing PPCfC's pending application for a license to operate an abortion facility. As explained below, the Court lacks jurisdiction over this as-applied challenge to Louisiana's licensing system because the challenge is unripe (*see infra* I.A.) and because it would require the Court to interfere with and ultimately take over an ongoing State administrative process in violation of two different limitations on this Court's powers (*see infra* I.B., I.C.). Plaintiffs' separate challenge to the funding restriction in HB 606 is unripe for other reasons: Plaintiffs only allege that that law would be triggered if PPCfC received a license—which has not happened yet.

Because Plaintiffs fail to plead justiciable claims, this Court should dismiss.

**BACKGROUND**

**A. Relevant Statutes and Regulations**

Plaintiffs do not facially challenge any of the procedures or requirements of Louisiana's abortion facility licensing system. They instead challenge only the way the Department has *administered* that system in the circumstances of PPCfC's pending application.

Some background on Louisiana abortion licensing will help the Court evaluate Plaintiffs' claims. Louisiana law requires licenses for outpatient abortion facilities (or "abortion clinics"). *See* La. R.S. § 40:2175.4(A). Licensing those clinics is the responsibility of the Department, which has authority to "promulgate and publish rules, regulations, and licensing standards to provide for the health, safety, and welfare of women in outpatient abortion facilities and for the safe operation of such facilities." La. R.S. § 40:2175.5; *see also* La. Admin. Code tit. 48, ch. 44 (Department regulations on abortion facility licensing). Within the Department, the principal office responsible for licensing is the Health Standards Section, which administers licensing rules, performs periodic inspections of licensed facilities, and investigates complaints directed at licensed facilities. *See* Apr. 4, 2018 Decl. of C. Castello at ¶ 5 ("Castello Decl.").

A license application must be submitted "on a form prescribed by [the Department]." La. R.S. § 40:2175.6(A). The contents of the application packet are set by regulation. *See* La. Admin. Code § 48:4405. When an application is incomplete, the Department notifies the applicant, who then has "90 calendar days from receipt of the notification to submit the additional requested information." *Id.* § 48:4405(E). If the applicant fails to submit the additional request information, the Department may close the application. *Id.* The last step of an application, after review of the applicant's paper packet, is a site inspection. *Id.* § 48:4405(F). Louisiana law provides channels

for review of license denials or revocations by State courts and the Department. La. Rev. Stat. §§ 49:964(B), 40:2175.6(G); 49:992(D)(2)(b)(vi).

Importantly, an applicant for an abortion clinic license must comply with all applicable substantive laws. The relevant statute provides that the Department:

> may deny a license, may refuse to renew a license, or may revoke an existing license, if an investigation or survey determines that the applicant or licensee is in violation of any provision of this Part, in violation of the licensing rules promulgated by the department, or in violation of any other federal or state law or regulation.

La. R.S. § 40:2175.6(G). The Department is thereby permitted to deny or revoke the licenses of abortion clinics found in violation of State or federal standards. As implemented by the Department pursuant to its rulemaking authority, the statute also creates a prerequisite for issuing new licenses:

> An outpatient abortion facility shall be in compliance with all applicable federal, state, and local statutes, laws, rules, regulations, and ordinances, including department rules, regulations, and fees, governing or relating to outpatient abortion facilities, abortion or termination procedures, reporting requirements, ultrasound requirements, informed consent requirements or any other matter addressed by law related to an abortion or abortion procedures before the outpatient abortion facility will be issued an initial license to operate.

La. Admin. Code § 48:4403(C). Those licensing provisions require compliance with *all* applicable laws and regulations, including federal and out-of-state ones. *See* Castello Decl. at ¶ 6.

Separately at issue in this case are Louisiana laws bearing on Medicaid funding for PPGC. *See* House Bill 606, 1st Regular Session (2016), codified at La. R.S. §§ 40:106(A) & 36:21 ("HB 606").[1] HB 606 provides that, with certain exceptions:

> No institution, board, commission, department, agency, official, or employee of the state, or of any local political subdivision thereof, shall contract with, award any grant to, or otherwise bestow any funding upon, an entity or organization that

---

[1]    Amendments to HB 606 are now pending in the Louisiana legislature. *See* http://www.legis.la.gov/legis/BillInfo.aspx?s=18RS&b=HB338&sbi=y.

performs abortions, or that contracts with an entity or organization that performs abortions, in this state.

La. R.S. § 36:21(B)(1). Although enacted in 2016, HB 606 has not yet been implemented. The statute was challenged on constitutional grounds soon after it was enacted, and Louisiana stipulated to stay implementation. *See* Doc. 14-1, *June Medical Servs. LLC v. Gee*, No. 3:16-cv-444 (M.D. La. July 15, 2016).[2] That separate challenge is now pending in this Court before Chief Judge Jackson.

### B. Factual Background

The gravamen of Plaintiffs' challenge is that the Department's licensing process is a "sham" intended to *de facto* deny a license to PPCfC and that the process therefore violates the Constitution. *See* Compl. at 19, ¶ 74. But as the attached declarations show, the Department's review of PPCfC's application is both real and ongoing.[3]

The Department received PPCfC's application October 3, 2016. *See* Castello Decl. at ¶ 9. The Department promptly reviewed the application and notified PPCfC of several deficiencies approximately six weeks later on November 16, 2016. *See id.* ¶ 10. The Department did not receive a response until April 11, 2017—a five-month delay on PPCfC's part. Instead of cancelling PPCfC's application, as the Department's regulations allowed, *see* La. Admin. Code § 48:4405(E), the Department resumed review. *See* Castello Decl. at ¶ 11. At the end of May 2017, the

---

[2]    Plaintiffs' pleadings note the stipulation, Compl. at 21–22 & n.12, but fail to mention that it concerns HB 606.

[3]    As shown below, these facts bear on questions of jurisdiction including the justiciability of Plaintiffs' claims, the applicability of *Burford* abstention doctrine, and the Court's jurisdiction to grant relief. This Court may consider and find such facts for purposes of evaluating its own jurisdiction—even if Plaintiffs dispute them. *See Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Department's Office of Public Health conducted an inspection of the proposed facility. *See id.* ¶ 12.

During the Department's processing of PPCfC's application, other potentially relevant facts developed, however. In late 2016, a Select Investigative Committee of the U.S. House of Representatives ("Select Committee") identified multiple potential violations of law involving disposition of fetal remains by PPGC in Texas.[4] The Select Committee referred several of those violations to the Texas Attorney General for investigation on December 1, 2016, and released its Final Report on December 30. *See* Castello Decl. at ¶ 14 & Exh. B at 79 (referral to Texas Attorney General). The original impetus for the Select Committee's investigation was the release of the videos mentioned in Plaintiffs' Complaint, *see* Castello Decl. Exh. B at xviii, but the evidence the Select Committee ultimately relied on for the findings in its 413-page Final Report was much broader, including e-mails and financial records. *See id.* at 261. Among other findings, the Final Report found evidence that PPGC had received or sought financial remuneration for transferring fetal body parts to Texas universities, in violation of federal and Texas law. *See id.* at 260–61.

Those potential violations necessarily implicate treatment of fetal remains by PPCfC, the PPGC affiliate that provides abortion services in PPGC centers. *See* Compl. at 7, ¶ 26. Because reviewing the applicant's compliance with all applicable laws is an important element of the abortion clinic licensing process (and because a license can be revoked, once granted, if violations are discovered), *see* La. R.S. § 40:2175.6, the Department determined that its best course was to reserve action on PPCfC's application while the facts of potential violations by PPGC developed. *See* Castello Decl. at ¶ 20.

---

[4] The Select Committee had convened pursuant to H. Res. 461 (2015), which authorized an investigation regarding the medical practices of abortion providers and the practices of entities that procure and transfer fetal tissue.

The Department promptly informed PPCfC of its decision to seek more information by letter dated June 13, 2017, just two weeks after the Office of Public Health inspection. *See id.* at ¶ 13 & Exh. A. The letter, signed by Cecile Castello (the Director of the Department's Health Standards Section) explained that the Department "may deny a license if an investigation or survey determines that the applicant is in violation of any federal or state law or regulation." *See* Castello Decl. Exh. A. The letter noted the Select Committee's "criminal and regulatory referral to the Texas Attorney General related to the operations of Planned Parenthood Gulf Coast," and explained that the Department needed to "conduct[] an investigation to determine if Planned Parenthood Center for Choice, either in its own name or through the actions of Planned Parenthood Gulf Coast, is in violation of any federal or state law or investigation." *Id.* The letter made clear that the investigation would involve "interfacing with the Louisiana Attorney General, the Texas Attorney General, and other federal entities." *Id.* The letter concluded that the Department "is neither approving nor denying [PPCfC's] application," but that "*[a]fter* the conclusion of this investigation, [the Department] will be in a position to make a determination on [PPCfC's] license application." *Id.* (emphasis added).

Because PPCfC does not yet perform abortions in Louisiana, *see* Castello Decl. at ¶ 8, the violations identified in the Select Committee's Final Report necessarily occurred in other jurisdictions. That is presumably why the Select Committee referred violations to other jurisdictions for investigation and potential prosecution, but not to Louisiana. Although those potential violations are relevant to Louisiana licensing, *see* La. R.S. § 40:2175.6, the ability of Louisiana agencies to investigate potential violations in other States is necessarily limited. *See* Castello Decl. at ¶ 19. Meanwhile, insofar as other jurisdictions are investigating the same conduct, Louisiana's direct involvement would waste resources and duplicate work—not just for the State,

but for PPCfC and PPGC as well—and would be impaired by jurisdictional limitations on State investigatory authority. *Id.* The Department's decision to reserve action on the application resulted from its legally prudent decision to follow an orderly licensing process that ensures compliance with the law.

Louisiana has endeavored to keep abreast of Texas' investigation. *See* Castello Decl. at ¶ 16. The Department has requested information from Texas about the progress of its investigation, but Texas has declined to provide details. In one communication, Texas sent only publicly available documents related to its investigation. *See See* Castello Decl. at ¶ 17 & Exh. D. In the most recent communication, Texas acknowledged its investigation is ongoing, but declined to provide any further information, citing various State-law privileges. *See* Castello Decl. at ¶ 18 & Exh. E.

Texas' investigation is not the only one relevant to the Department's licensing process. The U.S. Department of Justice and the Federal Bureau of Investigation also are investigating Planned Parenthood. *See* Castello Decl. at ¶ 15 & Exh. C. And finally, in January 2018 Louisiana received a confidential complaint regarding activity by PPGC in Louisiana. The Louisiana Attorney General is currently investigating that complaint for potential action by the State. *See* Apr. 4, 2018 Decl. of P. Magee at ¶¶ 3–4 ("Magee Decl."). Because PPCfC, as admitted in the Complaint, has a "facilities and services agreement" to use the same "space, services, and staff" as PPGC, *see* Compl. at 7, ¶ 26, the investigation necessarily implicates PPCfC's intended relationship with PPGC. *See* Magee Decl. at ¶ 6.

## SUMMARY OF ARGUMENT

Plaintiffs' Complaint should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1). Plaintiffs' challenges related to PPCfC's license application (the "license claim") are

unripe because PPCfC's application has not been denied. The Department has not denied it expressly, and the facts do not permit a finding of a constructive denial. In addition, adjudicating Plaintiffs' license claim would require this Court to exceed the limits of its jurisdiction over the Department's actions. First, the license claim calls for this Court to supervise an ongoing State-law licensing process—the very kind of situation where *Burford* abstention doctrine calls for dismissal. *See Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). Second, the *relief* Plaintiffs demand on their license claim—including an injunction requiring issuance of a license to PPCfC—would require this Court to override the Department's interpretation of State law. This Court has no authority to issue such relief. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

Plaintiff's HB 606 claim is premised on the theory that *if* PPCfC receives a license, then PPGC's State Medicaid funding would be threatened. Plaintiffs' challenge to HB 606 is therefore not even arguably ripe until PPCfC receives an abortion clinic license.  But PPCfC does not have a license. Plaintiffs' HB 606 claims are nonjusticiable until a concrete case or controversy arises.

## STANDARD OF REVIEW

Rule 12(b)(1) motions are evaluated under the same standard as motions to dismiss under Rule 12(b)(6). *Hall v. Louisiana*, 974 F. Supp. 2d 944, 951 (M.D. La. 2013). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* In performing that analysis, this Court "is

empowered to consider matters of fact which may be in dispute." *Id.*; *see also Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015).

## ARGUMENT

### I.   Plaintiffs' Licensing Claims Are Nonjusticiable (Counts 1, 2, and 5).

As the attached declarations show, Louisiana's handling of PPCfC's application reflects the requirements of State law in light of investigations pending in multiple jurisdictions, which must run their course before any licensing decision is appropriate. The Department's position reconciles the State's interest in promptly resolving pending applications, its need to guarantee that licensees will act consistently with Louisiana law if their applications are granted, and its limited ability to investigate out-of-state conduct. This Court lacks jurisdiction to review the Department's prudential administration of the State licensing process at this stage.

### A.   Plaintiffs' licensing claims are unripe.

At the threshold, Plaintiffs' licensing claim is nonjusticiable because it is unripe.[5] That claim hinges on the theory that the Department has constructively denied PPCfC's application. It is well established, however, that a claim for denial of an application is not ripe until the application has actually been denied. *See Monk v. Huston*, 340 F.3d 279, 283 (5th Cir. 2003); *see also Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009); *Lawrence v. Chabot*, 182 F. App'x 442, 455 (6th Cir. 2006); *Oil, Chem. & Atomic Workers Int'l Union AFL-CIO v. Gillette Co.*, 905 F.2d 1176, 1177 (8th Cir. 1990). Here, PPCfC's application has *not* been denied, constructively or otherwise. The licensing claim is therefore not yet ready for this Court's review.

---

[5] "The key considerations [for ripeness] are the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) (quotes omitted).

The Department's communications with PPCfC do not say that the application has been denied; in fact, they say the opposite: "At this time, [the Department] is neither approving nor denying your application." *See* Castello Decl. Exh. A. Nor does the fact that PPCfC's application remains pending somehow amount to a constructive denial. The lack of final resolution is not a function of "delay" for the sake of delay, but instead depends on resolution of certain pending investigations, several of which have been publicly acknowledged. *Id.* ¶ 20. The Department's decision to pretermit its licensing decision until those investigations are resolved is neither arbitrary nor capricious as it rests on its understanding of its responsibilities under Louisiana law, *see* La. R.S. § 40:2175.6(G); La. Admin. Code § 48:4403(C), which this Court—as discussed in more detail below—has no jurisdiction to second-guess. *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 106; *infra* I.C. When the pending investigations of PPGC by Texas, Louisiana, and federal authorities are concluded, the Department has already stated that it "will be in a position to make a determination on [PPCfC's] license application." *See* Castello Decl. Exh. A. There is no basis to find a denial on these facts, which are essentially undisputed.

Because PPCfC's application has not been denied and is still under review for compliance with State and federal law, PPCfC does not yet have a ripe injury. When the time comes for the Department to address PPCfC's application, "[t]he application may or may not be granted, and thus plaintiffs may or may not be harmed." *Monk*, 340 F.3d at 283. Thus, "[e]ven assuming plaintiffs have identified constitutionally protected property interests that would be harmed by [denial] of the permit application, they have not suffered any deprivation, because [the Department's] permitting process has not yet run its course." *Monk*, 340 F.3d at 283. In the absence of any constructive or actual denial, there is not yet a ripe claim.

Waiting until a denial occurs (if a denial occurs at all) would aid this Court in resolving the case. Plaintiffs allege that the Department's licensing process is a "sham" intended to drag on indefinitely. *See* Compl. at 19, ¶ 74. But the Department has provided PPCfC with a specific benchmark for when it will be able to resolve the application: namely, resolution of pending investigations. *See* Castello Decl. Exh. A & ¶ 20. The best time to evaluate the Department's intent to diligently resolve the application will be *when that benchmark is met*. If the Department promptly resolves PPCfC's application when the investigations conclude (as it has every intention of doing), Plaintiffs' claims based on undue delay alone will be moot. If the Department *grants* PPCfC's application at that time, Plaintiffs' licensing claim will be moot altogether. And if the Department *denies* PPCfC's application, Plaintiffs will be able to raise specific issues about its entitlement to a license. It may be that denial of PPCfC's license (if it is denied) would raise State-law issues only, in which case Plaintiff's recourse will not be to this Court, but rather to the Department administrative procedures. *See* La. R.S. § 40:2175.6(G)(2); *id.* § 49:992(D)(2)(b)(vi). In any event, the currently non-existent *facts* concerning the Department's future actions will obviously bear on whether any constitutional deprivation has taken place, and whether this Court is the proper forum to grant Plaintiffs relief at all.

Moreover, no hardship to Plaintiffs can inure from waiting. *See Choice Inc.*, 691 F.3d at 715. Because (once again) this Court lacks jurisdiction to compel Defendant to change her interpretation of State licensing law, *see Pennhurst State Sch. & Hosp.*, 465 U.S. at 106, Plaintiffs cannot obtain relief from this Court as long as the Department interprets State laws to require postponing a decision on PPCfC's application. Because proceeding with litigation now cannot bring Plaintiffs any meaningful relief, waiting for further factual development of their claims—and an actual denial of their application, if that occurs—cannot do them any harm. Nothing justifies

racing to the merits now, particularly in light of the risk that premature adjudication would extend this Court beyond its Article III authority.

**B. This Court should abstain under *Burford* from reviewing Louisiana's licensing process.**

Under *Burford* abstention, federal courts sitting in equity abstain from (and dismiss) actions where State-court relief is available and where (1) "there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," or (2) "the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Clark v. Fitzgibbons*, 105 F.3d 1049, 1051–52 (5th Cir. 1997) (quotes omitted); *Estate of Merkel v. Pollard*, 354 F. App'x 88, 93 (5th Cir. 2009). Given that Louisiana is engaged in an ongoing licensing process—as shown by Plaintiffs' own pleadings, Louisiana statutes, and the declarations described above—this Court should abstain from judicial review.

The threshold standards for *Burford* abstention are met here. Plaintiffs' requests for declaratory and injunctive relief (and not for damages) are quintessentially equitable in nature. And even assuming that Plaintiffs' licensing claim is ripe, nothing prevents them from bringing it in Louisiana State courts, which have authority to grant relief under the federal constitution or under Louisiana's own due process and equal protection doctrines. *See* La. Const. art I, §§ 2, 3. Louisiana courts, unlike this Court, have authority to address whether the Department's decision to defer PPCfC's application while out-of-state investigations develop complies with Louisiana licensing laws. *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 106; *see also infra* I.C. If PPCfC's application were denied on State-law grounds, PPCfC would have no choice but to seek State-court relief.

Given that the threshold conditions are satisfied, this case warrants *Burford* abstention because review of the State's licensing processes would disrupt the State's efforts to regulate outpatient abortion services in the interests of its citizens' health and safety. The Fifth Circuit evaluates five factors regarding *Burford* abstention: "(1) whether the cause of action arises under federal or state law, (2) whether the case requires inquiry into unsettled issues of state law, or into local facts, (3) the importance of the state interest involved, (4) the state's need for a coherent policy in that area, and (5) the presence of a special state forum for judicial review[.]" *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 314 (5th Cir. 1993) (citations omitted). Those elements point to abstention here.

As to the first two factors, "*Burford* abstention does not so much turn on whether the plaintiff's cause of action is alleged under federal or state law, as it does on whether the plaintiff's claim may be in any way entangled in a skein of state law that must be untangled before the federal case can proceed." *Sierra Club v. City of San Antonio*, 112 F.3d 789, 795 (5th Cir. 1997) (quotes omitted). In other words, *Burford* abstention does not require that a plaintiff's claim arise under State law; after all, *Burford* itself involved a federal due process challenge to a State's licensing system. 319 U.S. at 316–17. In this case, there are *two* "skein[s] of state law" that complicate this Court's adjudication of federal questions. *See Sierra Club*, 112 F.3d at 795.

One is the State licensing regime. This case implicates the Department's exercise of its licensing authority, including its discretionary decisions about how to handle PPCfC's license application in light of serious legal concerns that could lead to revocation of a license if granted. *See* Castello Decl. at ¶¶ 6–7, 20. The Department's decision to defer PPCfC's application until resolution of pending investigations rests on the Department's application of State law, *see id.* ¶ 20; La. R.S. § 40:2175.6(G); the Department's ultimate decision whether to grant a license will

as well. Like in *Burford*, if Plaintiffs' case proceeds this Court will be "called upon … to determine whether [the Department] has acted within the scope of statutory authority, while the important [federal] constitutional issues have … been fairly well settled from the beginning." 319 U.S. at 328. Even if this Court had authority to order Defendant to "conform [her] conduct to state law," *see Pennhurst State Sch. & Hosp.*, 465 U.S. at 106, whatever federal issues might be involved are impossible to untangle from the State issues.

The other complicating factor is the "skein" of privileges applicable to Louisiana licensing and investigative processes. State decisional processes are protected from disclosure under both State and federal law. *See, e.g.*, *Louisiana Dep't of Ins. ex rel. Donelon v. Theriot*, 64 So. 3d 854 (La. App. 1 Cir. 2011); *Kyle v. Louisiana Pub. Serv. Comm'n*, 878 So. 2d 650 (La. App. 1 Cir. 2004); *Janvey v. Adams & Reese, LLP*, No. 14-25-BAJ-RLB, 2015 WL 2453730, at *1 (M.D. La. May 22, 2015). So are State law enforcement investigations. *See Coughlin v. Lee*, 946 F.2d 1152 (5th Cir. 1991); La. R. S. § 44:3; *see also* Castello Decl. Exh. E (describing Texas law enforcement privilege); Magee Decl. at ¶ 5. There is no way even to begin to adjudicate Plaintiffs' claims on the merits without addressing issues of privilege and resolving them against the Department, which would constitute a serious intrusion into State sovereignty.

As to the third and fourth factors, the State's interests in regulating abortion services to protect the health and safety of its citizens and to express respect for unborn human life are unquestionable. *See, e.g.*, *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2309–10 (2016), *as revised* (June 27, 2016); *Gonzales v. Carhart*, 550 U.S. 124, 145–46 (2007). And coherence is essential for the State's purposes. Louisiana has sensibly chosen to predicate abortion clinic licensure on the applicant's compliance with other law. *See* La. R.S. § 40:2175.6(G); La. Admin. Code § 48:4403(C). Licensing abortion clinics thus involves the Department's evaluation of an

applicant's or license holder's legal compliance, and judgments about the seriousness of potential violations. Likewise, violations can be a basis for both denial and revocation of a license, *see* La. R.S. § 40:2175.6(G), meaning that reviewing PPCfC's application requires the Department to weigh whether to delay granting a license in the first place or to risk granting a license that would later have to be revoked. The only sensible way to respect the State's policy needs and choices is to abstain from federal review of ongoing licensing processes. If federal court supervision intruded into that process, "[d]elay, misunderstanding of local law, and needless federal conflict with the State policy[] are the inevitable product[.]" *Burford*, 319 U.S. at 327.

Finally, as to the fifth factor, Louisiana has ordained specific procedures and channels for review of abortion clinic licensing issues. La. Rev. Stat. §§ 49:964(B), 40:2175.6(G); 49:992(D)(2)(b)(vi). Those statutes "provide[] a unified method for the formation of policy and determination of cases by [the Department] and by the state courts." *Burford*, 319 U.S. at 333–34. Since all factors of the *Burford* analysis weigh against proceeding with the case, this Court should abstain.

### C.  The relief Plaintiffs seek exceeds this Court's jurisdiction.

Alternatively, even if it were appropriate for this Court to review the State's ongoing licensing processes, Plaintiffs are not entitled to the relief they seek from their licensing claim. Plaintiffs flatly demand an order from this Court directing Defendant and the Department to act on PPCfC's application and *issue the license*.[6] But PPCfC's alleged entitlement to those forms of

---

[6] Plaintiffs demand a declaration that "denial of PPCfC's license violates the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment and is therefore void and of no effect," Compl. at 32, ¶ 127, and an injunction "enjoining Defendant … from withholding approval of PPCfC's application," "directing Defendant to promptly rule upon PPCfC's application," or "directing Defendant to grant PPCfC's application[.]" *Id.* at 32, ¶ 128.

relief comes from *State* law alone. Ordering Defendant to grant such relief to PPCfC is thus tantamount to ordering Defendant to comply with this Court's interpretation of Louisiana law. That relief is beyond this Court's jurisdiction to provide: "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 106. Because Plaintiffs seek a form of relief beyond this Court's jurisdiction, this Court should dismiss Plaintiffs' licensing claim.

Most obviously, the rights that Plaintiffs assert derive only from State law. PPCfC's ultimate right to a license can come only from State statutes and regulations providing standards for such licenses and authorizing the award of license to applicants who meet particular criteria. *See*, *e.g.*, La. R.S. § 40:2175.5. The Department has not yet finally resolved PPCfC's license based on the Department's understanding that State law requires it first to consider PPCfC's compliance with law, including potential violations being investigated by other authorities. *See* La. R.S. § 40:2175.6(G); Castello Decl. at ¶ 20. Even if this Court interprets those State laws as requiring a different review of PPCfC's application, it cannot order Defendant to comply. *See Fairley v. Louisiana*, 254 F. App'x 275, 276 (5th Cir. 2007) (holding that *Pennhurst* did not permit court to order a Louisiana agency to "re-open [an] investigation and conduct an examination" of facts).

Plaintiffs have no federal rights that compel Defendant to act differently. *See Lelsz v. Kavanagh*, 807 F.2d 1243, 1248–49 (5th Cir. 1987) (considering whether "some constitutional or federal right requires similar relief" compared to State law). While a woman's abortion *decision* is constitutionally protected, *particular abortion providers do not have a federal constitutional right to a license*, let alone a right to have the Department ignore potential legal violations that State law treats as relevant. An order directing Defendant to issue the license would thus amount

to a determination that an applicant has met State-law standards and that Defendant must grant the license that State law authorizes—in other words, the very "instruct[ion] … on how to conform [Defendant's] conduct to state law" that *Pennhurst* prohibits. 465 U.S. at 106.

Defendant's reasons for temporarily withholding PPCfC's license also derive from a legal responsibility mandated by State law, namely, the Department's need to evaluate PPCfC's compliance with law, and to do so before granting a license. *See* Castello Decl. at ¶¶ 6–7, 20. Because Defendant interprets State law to permit the Department to withhold a license for that reason, *see id.* ¶¶ 6–7, 20, granting the relief requested is tantamount to ordering Louisiana to cease investigating Plaintiffs and make a licensing decision without information that State law requires. That would therefore be an order that the Department exercise its discretion and interpret its licensing requirements differently, which violates *Pennhurst* as well.

## II. Plaintiffs' Challenges To HB 606 Are Nonjusticiable (Counts 1, 2, 3, and 4).

Plaintiffs' claims based on HB 606 are entirely contingent on PPCfC receiving an outpatient abortion facility license and the State implementing the statute to deny PPGC's Medicaid funding. Plaintiffs concede that this is the only way HB 606 could imperil PPGC. *See* Compl. at 13, ¶ 49 ("Because of the contractual relationship between PPGC and PPCfC, the Act means that PPGC *will be* disqualified from participating in Louisiana's Medicaid Program *once PPCfC begins providing constitutionally protected abortions* at the New Orleans Health Center.") (emphasis added). But whether those events will occur is entirely speculative. As a result, Plaintiffs lack standing or a ripe claim as to HB 606.

Standing requires that Plaintiffs plead an injury that is "concrete, particularized, and actual or imminent." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (quotes omitted). Because PPCfC does not yet have a license, HB 606 cannot now affect Plaintiffs at all, much less present PPGC with a choice between its PPCfC affiliation and its Medicaid funding. HB 606

therefore does not inflict the injury necessary for Plaintiffs to have standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), *as revised* (May 24, 2016) (for an injury to be "concrete" for purposes of standing, it "must be 'de facto'; that is, it must actually exist"). At a minimum, because the Department's review of PPCfC's application is ongoing—and could lead to either grant or denial—the injury from HB 606 is not "certainly impending." *Clapper*, 133 S. Ct. at 1147 (quotes omitted).

For similar reasons, Plaintiffs' challenge to HB 606 is unripe. "The key considerations [for ripeness] are the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Choice Inc.*, 691 F.3d at 715 (quotes omitted). Challenges to a regulation are not ripe when the regulation does not give rise to a hardship—for example, when the regulation "could [not] be said to be felt immediately by those subject to it in conducting their day-to-day affairs." *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 164 (1967). The Fifth Circuit has applied that rule to dismiss as unripe challenges to abortion regulations where the plaintiff "ha[d] not identified a single concrete example of how it ha[d] been forced to modify its behavior as a result of" the challenged law. *Choice Inc.*, 691 F.3d at 716. Here, Plaintiffs do not yet feel the effects of HB 606 in any way, and cannot until some unknown time in the future when PPCfC may receive an abortion clinic license.

Plaintiffs' challenges to HB 606 are not merely contingent on resolution of their licensing claims. As explained above, even if Plaintiffs' licensing claims were justiciable and well-pled, this Court cannot order the Department to grant PPCfC a license. *Supra* I.C. Without a license in PPCfC's hands, again, HB 606 can make no difference to PPGC. Whether PPCfC gets a license depends instead on the results of various pending investigations: If serious violations are found, Louisiana may deny the license as a matter of State law. Issuance of the license is thus a

18

"contingent future event[] that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). In short, no matter *how* this Court addresses Plaintiffs' licensing claims—and even if the Court allows them to proceed at all—Plaintiffs would *still* lack a justiciable challenge against HB 606.

Finally, independent of *both* this Court's resolution of Plaintiffs' licensing claim and the Department's internal licensing process, Plaintiffs' challenges to HB 606 depend on resolution of other pending cases. A separate constitutional challenge to the statute is pending before Chief Judge Jackson in this Court. *See June Medical Servs. LLC v. Gee*, No. 3:16-cv-444 (M.D. La.). The Fifth Circuit's decision in *Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445 (5th Cir. 2017), *en banc review denied*, Nov. 28, 2017—for which Louisiana's petition for certiorari is forthcoming—may affect Louisiana's implementation of HB 606 as to Medicaid recipients as well.[7] Even if Plaintiffs' HB 606 claims were justiciable, the proper course will be to transfer them to Judge Jackson or stay them pending disposition of pending cases.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs' Complaint.

Respectfully submitted,

Jeff Landry
  Louisiana Attorney General

 /s/  Elizabeth B. Murrill
Elizabeth B. Murrill
  Solicitor General
OFFICE OF THE ATTORNEY GENERAL
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third St.
Baton Rouge, LA 70804

---

[7] Louisiana's deadline to file its petition for certiorari is April 27, 2018. *See Gee v. Planned Parenthood Gulf Coast*, No. 17A810 (U.S. Feb. 1, 2018). Kansas has filed a petition for certiorari on the same issue. *See Anderson v. Planned Parenthood of Kansas and Mid-Missouri*, No. 17-1340 (U.S. March 21, 2018).

(225) 326-6766
murrille@ag.louisiana.gov

Stephen S. Schwartz (*pro hac vice* pending)
  sschwartz@Schaerr-Duncan.com
SCHAERR | DUNCAN LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 714-9492

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this date, I electronically filed the foregoing document with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to all

CM/ECF participating attorneys

This the 4th day of April, 2018.

          /s/  Elizabeth B. Murrill
Elizabeth B. Murrill
  Solicitor General
OFFICE OF THE ATTORNEY GENERAL
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third St.
Baton Rouge, LA 70804
(225) 326-6766
murrille@ag.louisiana.gov

*Counsel for Defendant*