UNM did not produce this revised policy to the Panel.

Despite SWWO's inclusion of a fetal tissue donation consent form in its production, *Patient's* allegation that it was never shown to her, combined with *Doctor #5* admission that she did not even recognize the form, raises a serious question as to whether SWWO and UNM systematically violated the law, not to mention UNM's own internal policy, by conducting fetal tissue donations without more than the perfunctory reference to tissue research in SWWO's abortion consent form.

The same alleged deficiencies in the consent process at SWWO would constitute a violation of New Mexico's state law. Regardless of whether government funding or transplantation research is involved, N.M. Stat. Ann. § 24-9A-5, which is part of the Maternal, Fetal and Infant Experimentation Act, prohibits any "clinical research activity involving fetuses, live-born infants or pregnant women" unless the woman

> has been fully informed of the following:
>
> > (1) a fair explanation of the procedures to be followed and their purposes, including identification of any procedures which are experimental;
> > (2) a description of any attendant discomforts and risks reasonably to be expected;
> > (3) a description of any benefits reasonably to be expected;
> > (4) a disclosure of any appropriate alternative procedures that might be advantageous for the subject;
> > (5) an offer to answer any inquiries concerning the procedure; and
> > (6) an instruction that the person who gave the consent is free to withdraw his consent and to discontinue participation in the project or activity at any time without prejudice to the subject.[20]

---

requiring that fetal tissue for research be acquired "in accordance with the provisions of the" Spradling Act "and/or with contractual assurance that it was obtained in accordance with" that statute. *Id.* at 3-4.

[20] N.M. Stat. Ann. § 24-9A-5(C). As discussed above, the Spradling Act prohibits use of fetal tissue resulting from induced abortion, but this informed consent provision provides a basis for liability separate from the underlying use of such tissue. It additionally should be noted that the Maternal, Fetal and Infant Experimentation Act defines the term "clinical research" as follows:

> "clinical research" means any biomedical or behavioral research involving human subjects, including the unborn, conducted according to a formal procedure. The term is to be construed liberally to embrace research concerning all physiological processes in human beings and includes research involving human in vitro fertilization, but shall not include diagnostic testing, treatment, therapy or related procedures conducted by formal protocols deemed necessary for the care of the particular patient upon whom such activity is performed and shall not include human in vitro fertilization performed to treat infertility; provided that this procedure shall include provisions to ensure that each living fertilized ovum, zygote or embryo is implanted in a human female recipient, and no physician may stipulate that a woman must abort in the event the pregnancy should produce a child with a disability. Provided that emergency medical procedures necessary to

5

This statute is notably cited in the standard operating procedures of UNM's Office of the Institutional Review Board, but UNM failed to produce that document to the Panel.[21] Other sections of the Maternal, Fetal and Infant Experimentation Act make clear that neither a pregnant woman nor a fetus shall be involved as subjects in clinical research activity unless "the mother is legally competent and has given her informed consent,"[22] subject to penalties of imprisonment for less than one year and/or payment of a fine up to $1,000.[23]

I urge your office to conduct a thorough investigation into whether the University of New Mexico and Southwestern Women's Options violated federal and state law, and, if you conclude that such violations occurred, to take all appropriate action. If you have any questions about this request, please contact Frank Scaturro, at (202) 225-2927, Frank.Scaturro@mail.house.gov.

Sincerely yours,

Marsha Blackburn
Chairman
Select Investigative Panel

Attachment(s)

cc: The Honorable Jan Schakowsky, Ranking Member
Select Panel on Infant Lives

The Honorable Susana Martinez
Governor of New Mexico

The Honorable John A. Sanchez
Lieutenant Governor of New Mexico

The Honorable Steve Pearce
Second Congressional District, New Mexico

---

preserve the life or health of the mother or the fetus shall not be considered to be clinical research . . . ."
N.M. Stat. Ann. § 24-9A-1(D).
[21] See UNM Office of the Institutional Review Board, Standard Operating Procedures, effective Mar. 1, 2016, at 1-2, http://irb.unm.edu/sites/default/files/511.0%20Compliance%20with%20Applicable%20Laws%20and%20Regulations.pdf, attachment 8.
[22] N.M. Stat. Ann. §§ 24-9A-2(B), 24-9A-3(B).
[23] N.M. Stat. Ann. § 24-9A-6.

ONE HUNDRED FOURTEENTH CONGRESS

Congress of the United States

House of Representatives

COMMITTEE ON ENERGY AND COMMERCE
2125 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515–6115
Majority (202) 225–2927
Minority (202) 225–3641

December 20, 2016

**VIA EMAIL**

The Honorable Loretta Lynch
Attorney General
c/o Office of Legislative Affairs
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530

Dear Attorney General Lynch:

On October 7, 2015, the U.S. House of Representatives passed H. Res. 461, which created the Select Investigative Panel (the "Panel") and empowered it to conduct a full and complete investigation regarding the medical practices of abortion providers and the practices of entities that procure and transfer fetal tissue.

The Panel investigation discovered information that StemExpress, LLC ("StemExpress"), a firm that procures fetal tissue from abortion clinics and transfers it to research customers, may have destroyed documents in violation of Title 18 U.S.C. § 1519. The transfer of fetal tissue for valuable consideration is a matter within the jurisdiction of the United States. Specifically, Title 42 U.S.C. § 289 (g) makes it a felony to receive valuable consideration for fetal tissue in excess of allowable costs.

From July 16, 2015 through the passage of H. Res. 461, the Senate Committee on the Judiciary ("Senate Judiciary"), the House Committee on Energy and Commerce ("Energy and Commerce"), and the House Committee on Oversight and Government Reform ("OGR") all conducted inquiries into the fetal tissue industry. The Senate Committee on the Judiciary's investigation still continues. During the course of those congressional inquiries, all of those committees sent document request letters to StemExpress.

Under 18 U.S.C. § 1519, "Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the

1

jurisdiction of any department or agency of the United States"[1] commits a felony that is punishable by imprisonment for up to 20 years.[2]

The Panel has discovered a regime of StemExpress' potential destruction of documents that were the subject of congressional inquiries, document request letters, and subpoenas. This regime, which dates back to August 2015 and continues through the present, involves StemExpress' retention of a company that shreds documents for clients, and the production of accounting records that were created by StemExpress' counsel, which the counsel represented were produced by StemExpress itself.

### A. Destruction of Documents

**Senate Judiciary Committee**

On July 16, 2015, Senate Judiciary sent StemExpress a document request letter for all records relating to StemExpress' communications with a senior official of Planned Parenthood, and with Planned Parenthood itself that related to "the centralization or coordination of StemExpress' acquisition of fetal tissue from Planned Parenthood's individual affiliates . . ."[3] On July 24, 2015, StemExpress produced only copies of its contract with Planned Parenthood affiliates.[4]

On August 13, 2015, StemExpress made its first payment to Shred-It-USA.[5] StemExpress bank records dating back to November 2012 reveal there were no payments made to Shred-It USA before August 13, 2015.[6] On August 19, 2016, StemExpress made a second production to Senate Judiciary.[7]

On August 25, 2015, StemExpress made its second payment to Shred-It-USA.[8] On September 17, 2015, Senate Judiciary sent its second document request letter to StemExpress.[9] On September 17, 2015, StemExpress produced documents to Senate Judiciary.[10] On September 24,

---

[1] 18 U.S.C. § 1519.
[2] 18 U.S.C. § 1519.
[3] Letter from Sen. Charles E. Grassley, Chairman, Senate Committee on the Judiciary, to ▓▓▓▓ Founder and CEO, Stem Express, (Jul. 16, 2015), at 2.
[4] *See* Letter from Stephen M. Ryan, McDermott Will & Emery, to Sen. Charles E. Grassley, Chairman, Senate Committee on the Judiciary, Re: StemExpress Response to Senate Judiciary Committee's July 16, 2015 Request for Information, (Jul. 24, 2015).
[5] Panel analysis of Five Star Bancorp production to Select Investigative Panel.
[6] Five Star Bank Production [5 Star 000001 – 5 Star 000511].
[7] *See* Letter from Stephen M. Ryan, McDermott Will & Emery, to Sen. Charles E. Grassley, Chairman, Senate Committee on the Judiciary, Re: StemExpress Second Response to Senate Judiciary Committee's July 16, 2015 Request for Information, (Aug. 19, 2015).
[8] Panel analysis of Five Star Bancorp production to Select Investigative Panel.
[9] *See* Letter from Stephen M. Ryan, McDermott, Will & Emery, to Sen. Charles E. Grassley, Chairman, Senate Committee on the Judiciary, Re: StemExpress Second Response to Senate Judiciary Committee's September 17, 2015 Request for Information, (Oct. 28, 2015). ("I am writing today on behalf of my client, StemExpress, in regard to the letter you sent to the company on September 17, seeking information related to StemExpress; 'acquisition and transfer of fetal tissue.'").
[10] Letter from Stephen M. Ryan, McDermott Will & Emery, to Sen. Charles E. Grassley, Chairman, Senate Committee on the Judiciary, Re: StemExpress Second Response to Senate Judiciary Committee's September 17,

2

2015, StemExpress produced documents to Senate Judiciary.[11] On September 29, 2015, StemExpress made a payment to Shred-It-USA.[12] On October 28, 2015, StemExpress produced documents to Senate Judiciary.[13]

**Energy and Commerce**

On August 7, 2015, Energy and Commerce sent a letter to StemExpress that requested a briefing related to StemExpress' procurement, sale and donation of fetal tissue.[14] On August 13, 2015, StemExpress made its first payment to Shred-It-USA.[15] On August 21, 2015, StemExpress produced documents to Energy and Commerce.[16]

The briefing between StemExpress and Energy and Commerce staff was held on August 25, 2015. On August 24, 2015 StemExpress voluntarily produced documents to Energy and Commerce.[17] Congressional staff requested additional information and documents from StemExpress.[18] On August 25, 2015, StemExpress made its second payment to Shred-It-USA.[19] On September 11, 2015 StemExpress produced documents pursuant to the requests from the Majority and Minority.[20]

---

2015 Request for Information, (Oct. 28, 2015). ("StemExpress made an initial production in response to the September 17 letter shortly after receipt . . .").

[11] Letter from Stephen M. Ryan, McDermott Will & Emery, to Sen. Charles E. Grassley, Chairman, Senate Committee on the Judiciary, Re: StemExpress First Response to Senate Judiciary Committee's September 17, 2015 Request for Information, (Sep. 24, 2015).

[12] Panel analysis of Five Star Bancorp production to Select Investigative Panel.

[13] Letter from Stephen M. Ryan, McDermott, Will & Emery, to Sen. Charles E. Grassley, Chairman, Senate Committee on the Judiciary, Re: StemExpress Second Response to Senate Judiciary Committee's September 17, 2015 Request for Information, (Oct. 28, 2015).

[14] Letter from Stephen M. Ryan, McDermott Will & Emery, to Rep. Fred Upton, Chairman, House Energy & Commerce Committee, Re: StemExpress Response to House Energy and Commerce Committee's August 7, 2015 Request for a Briefing, (Aug. 21, 2015), at 1. ("I am writing today on behalf of my client, StemExpress, in regard to the letter you sent to the company on August 7, 2015, seeking a briefing related to StemExpress's 'practices regarding human fetal tissue collection, sale and/or donation.'").

[15] Panel analysis of Five Star Bancorp production to Select Investigative Panel.

[16] Letter from Stephen M. Ryan, McDermott Will & Emery, to Rep, Fred Upton, Chairman, House Energy & Commerce Committee Re: StemExpress Response to House Energy and Commerce Committee's August 7, 2015 Request for a Briefing, (Aug. 21, 2015).

[17] Letter from Stephen M. Ryan, McDermott Will & Emery, to Rep. Fred Upton, Chairman, House Energy & Commerce Committee, Re: StemExpress Response to House Energy and Commerce Committee's August 7, 2015 Request for a Briefing, (Aug. 24, 2015), at 1. ("In advance of our voluntary briefing to staff scheduled for August 25, we are voluntarily responding to the staff's request by producing several documents to facilitate our discussion.").

[18] Letter from Stephen M. Ryan, McDermott Will & Emery, to Rep. Fred Upton, Chairman, House Energy & Commerce Committee, (Sep. 11, 2015), at 1. ("As you know, StemExpress's CEO, ▮▮▮▮▮ voluntarily agreed to provide a briefing to the Committee's staff on August 25. Following this briefing, both the Majority and Minority staff provided StemExpress with a list of 20 additional request.").

[19] Panel analysis of Five Star Bancorp production to Select Investigative Panel.

[20] Letter from Stephen M. Ryan, McDermott Will & Emery, to Rep. Fred Upton, Chairman, House Energy & Commerce Committee, Re: StemExpress Third Response to House Energy and Commerce Committee's August 7, 2015 Request for a Briefing (Follow-Up Requests), (Sep. 11, 2015), at 1.

## OGR

On September 9, 2015, OGR sent a document request letter to StemExpress.[21] StemExpress produced documents to OGR on September 2, 2015 and September 23, 2015.[22] On September 29, 2015, StemExpress made a payment to Shred-It-USA.[23] On October 9, 2015, StemExpress produced more documents to OGR.[24]

## The Panel

The Panel was created on October 7, 2016. On November 10, 2015 StemExpress made a payment to Shred-It-USA.[25] On December 10, 2015, StemExpress made another payment to Shred-It-USA.[26] During that time period, StemExpress was under investigation by Senate Judiciary and OGR.

On December 17, 2015, the Panel sent StemExpress a document request letter.[27] On December 18, 2015, congressional staff had a telephone conference with counsel for StemExpress to discuss the document request. On December 22, 2015, StemExpress produced documents to the Panel.[28]

On January 12, 2015, StemExpress made a payment to Shred-It-USA.[29] On January 15, 2015, StemExpress produced documents to the Panel.[30] On January 27, 2015, StemExpress made a

---

[21] Letter from Amandeep S. Sidhu, McDermott Will & Emery, to Rep. Jason Chafetz, Chairman, House Committee on Oversight and Government Reform, Re: StemExpress First Response to House Committee on Oversight and Government Reform's September 9, 2015 Request for Information, (Sep. 23, 2015), at 1. ("I am writing today on behalf of my client, StemExpress, in regard to the letter you sent to the company on September 9, 2015, seeking documents and information regarding 'the process whereby StemExpress obtained fetal tissue from Planned Parenthood Federation of America . . .'").

[22] Letter from Amandeep S. Sidhu, McDermott Will & Emery, to Rep. Jason Chafetz, Chairman, House Committee on Oversight and Government Reform, Re: StemExpress First Response to House Committee on Oversight and Government Reform's September 9, 2015 Request for Information, (Sep. 23, 2015), at 1. ("As an initial matter, StemExpress voluntarily produced several documents to the Committee's staff on September 2, 2015. Accordingly, today's production represents StemExpress's second voluntary response to the Committee's inquiries . . .").

[23] Panel analysis of Five Star Bancorp production to Select Investigative Panel.

[24] Letter from Amandeep S. Sidhu, McDermott Will & Emery, to Rep. Jason Chaffetz, Chairman, House Committee on Oversight and Government Reform, Re: StemExpress Second Response to House Committee on Oversight and Government Reform's September 9, 2015 Request for Information, (Oct. 9, 2015).

[25] Panel analysis of Five Star Bancorp production to Select Investigative Panel.

[26] Panel analysis of Five Star Bancorp production to Select Investigative Panel.

[27] Letter from Rep. Marsha Blackburn, Chairman, House Select Investigative Panel, to [REDACTED] Founder and CEO, StemExpress, LLC (Dec. 17, 2015). The letter sought, among other items, asking for, among other items, a list of all entities from which it procured fetal tissue, a list of all entities to which it sold or donated fetal tissue, an organization chart, all communications that direct its employees to procure fetal tissue, a list of all federal funds the firm received, accounting records, and all StemExpress banking records related to the procurement, sale, donation, or distribution or shipment of fetal tissue.

[28] Letter from Stephen M. Ryan, McDermott Will & Emery, to Rep. Marsha Blackburn, Chair, Select Panel on Infant Lives, Re: StemExpress Response to House "Select Panel on Infant Lives" December 17, 2015 Request for Documents, (Dec. 22, 2015).

[29] Panel analysis of Five Star Bancorp production to Select Investigative Panel.

[30] Letter from Amandeep S. Sidhu, McDermott Will & Emery, to Rep. Marshal Blackburn, Chair, Select Panel on Infant Lives, Re: StemExpress LLC Second Production in Response to House "Select Panel on Infant Lives" December 17, 2015 Request for Documents, (Jan. 15, 2016).

4

payment to Shred-It-USA.[31] On February 1, 2016, StemExpress produced documents to the Panel.[32]

On February 12, 2016, the Panel issued a subpoena to StemExpress.[33] The subpoena to StemExpress instructed that: "No records, documents, data or information called for by this

---

[31] Panel analysis of Five Star Bancorp production to Select Investigative Panel.
[32] Letter from Amandeep S. Sidhu, McDermott Will & Emery, to Rep. Marsha Blackburn, Chair, Select Panel on Infant Lives, Re: StemExpress LLC Third Production to House "Select Panel on Infant Lives" December 17, 2015 Request for Documents, (Feb. 1, 2016).
[33] Subpoena to StemExpress, LLC, (Feb. 12, 2016). The subpoena demanded the following:

> 1) Documents sufficient to show (a) all entities from which StemExpress procured fetal tissue, and (b) all entities to which StemExpress transported, sold, donated, moved, or shipped fetal tissue. Should StemExpress wish to produce a list of such entities referenced in (a) and (b) in lieu of documents, it may do so.
>
> 2) Documents sufficient to show the name and title of all StemExpress current and former employees whose responsibilities included procuring, researching, storing, packaging for donation, sale, transport, or disposal of fetal tissue, and the identity, of any supervisory personnel under whom such individuals worked.
>
> 3) All communications and documents relating to StemExpress employee compensation resulting from or relating to fetal tissue samples procured by current and former StemExpress personnel or other persons or entities that transact business with StemExpress.
>
> 4) All communications and documents that identify any federal, state, or local government funds received, directly or indirectly, by StemExpress.
>
> 5) All communications referring or relating to abortion or fetal tissue between StemExpress and any federal, state, or local government officials or employees.
>
> 6) All communications and documents regarding any direction to StemExpress current or former personnel with respect to the procurement or disposal of fetal tissue.
>
> 7) All communications and documents that StemExpress utilizes to obtain patient consent for fetal tissue at any clinic.
>
> . . . 8) All communications and documents, including but not limited to accounting memoranda, referring or relating to the cost and pricing of fetal tissue by StemExpress.
>
> 9) All communications and documents, sorted by customer, referring or relating to requests or orders made to StemExpress regarding fetal tissue and the amount paid by each customer to StemExpress.
>
> 10) All communications and documents referring or relating to the purchase, ownership, or rental by StemExpress of equipment for the storage, disposal, modification, or research of fetal tissue, including equipment price, purchase date, maintenance costs, and records of the depreciation treatment under the tax code of any such equipment.
>
> 11) All StemExpress banking and accounting documents, sorted by any source of fetal tissue and any customer of StemExpress, that reflect accounts payable and/or funds received that in any way refer or relate to the procurement, sale, donation, or distribution or shipment of fetal tissue.

request shall be destroyed, modified, removed, transferred or otherwise made inaccessible to the Select Panel."[34] On March 21, 2016, StemExpress made a payment to Shred-It-USA.[35] On March 28, 2016, StemExpress produced documents to the Panel pursuant to the subpoena.[36]

On April 26, 2015, StemExpress made a payment to Shred-It-USA.[37] On May 10, 2016, StemExpress produced documents to the Panel pursuant to the February 2016 subpoena.[38]

### b. Intent to Obstruct

Documents produced to Congress and testimony before congressional inquiries strongly suggest StemExpress' intent to potentially subvert congressional investigations. The investigations involve matters within the jurisdiction of the United States. An attempt to obstruct such an investigation would violate Title 18 § 1519.

In productions to Senate Judiciary, OGR, and the Panel, StemExpress refused to provide congress with a list of all the entities from which it obtained fetal tissue.[39] StemExpress refused to produce to the Panel requested accounting documents, StemExpress represented that it had lost money on fetal tissue procured from Planned Parenthood affiliates.[40]

---

12) Documents sufficient to show any known litigation in which StemExpress is named as a party, including any threatened or anticipated litigation. Should StemExpress wish to produce a list of such litigation, including appropriate docket information, in lieu of documents, it may do so.

Subpoena to StemExpress, LLC (Feb. 12, 2016) (Schedule).
[34] Subpoena to StemExpress, LLC, at Instruction Item 5, (Feb. 12, 2016).
[35] Panel analysis of Five Star Bancorp production to Select Investigative Panel.
[36] Letter to Rep. Marsha Blackburn, Chair, Select Panel on Infant Lives, Re: Fourth Production in Response to February 12, 2016 subpoena Issued to StemExpress LLC, (Mar. 28, 2016).
[37] Panel analysis of Five Star Bancorp production to Select Investigative Panel.
[38] StemExpress Sixth Response to House Select Panel Subpoena Produced on May 10, 2016. [STEM.HOUSE.SELECT_0908 – STEM.HOUSE.SELECT_0913].
[39] *See* StemExpress Second Response to Senate Judiciary Committee September 17 Letter, undated. ("StemExpress has obtained fetal tissue from two Planned Parenthood affiliates . . . . StemExpress has also obtained fetal tissue from five independent (non-Planned Parenthood) clinics. StemExpress agrees to identify the states where it has agreements with independent clinics, but will not be providing the names of these clinics . . ."). [STEM.JUD000000024; STEM.HOUSE.SELECT_0057]. StemExpress Response to House Committee on Oversight and Government Reform, (Dec. 22, 2015). ("StemExpress has obtained fetal tissue from two Planned Parenthood affiliates . . . and from independent (non-Planned Parenthood) clinics. StemExpress agrees to identify the states where it has agreements with independent clinics, but will not be providing the names of these clinics . . .") [STEM.HOUSE.ORG_000018 / STEM.HOUSE.SELECT_0184]. StemExpress First Response to House Select Panel Document Requests (Jan. 15, 2016), at 2. (". . . many of the company's contracts are subject to non-disclosure agreements and, therefore, cannot be voluntarily produced.") [STEM.HOUSE.SELECT_0228].
[40] StemExpress First Response to House Select Panel Document Requests (Jan. 15, 2016), at 6. (". . . unaltered fetal tissue procured from Planned Parenthood affiliates generated approximately $50,000 in gross (pre-tax) revenue against expenses in excess of $75,000. StemExpress charged researchers a fee of roughly $500 to $600 for unaltered tissues, but incurred directly associated expenses of approximately $750 to $1,000 for each procurement. Other costs included compensation paid to StemExpress' tissue procurement personnel and costs associated with training, packaging and ordering supplies, overnight shipping charges, infectious disease screening. . ."). [STEM.HOUSE.SELECT_0232]. StemExpress invoices produced to the Panel show that StemExpress charged its customers the costs of infectious disease screening, overnight shipping charges, and some supplies. Those charges cannot have been incurred by both StemExpress and its customers.

6

In response to the Panel's February 12, 2016, subpoena StemExpress produced communications that spanned only two years instead of the five required by the subpoena and these were so replete with redactions as to render them unusable.[41] StemExpress produced only "roll-up" accounting summaries, not the required primary source accounting records.[42]

In response to Specification 4, which required the production of communications and documents that identify any federal, state, or local government funds received, directly or indirectly, by the firm, StemExpress responded that it had nothing responsive to produce. ("StemExpress has confirmed that there are no communications or documents responsive to this . . .").[43] Despite that representation, the Panel discovered that StemExpress received more than $9,000 in a small business loan from the U.S. Small Business Administration.[44]

█████ refused to produce any documents to the Congress pursuant to the Panel's March 29, 2016 subpoena to her.[45] █████ supplied the name of the Scinto Group, LLP ("Scinto"), an outside accounting firm that provided services to StemExpress, and suggested that the Panel seek the information it required from Scinto or from █████ a former employee of StemExpress.[46] Attorneys for █████ offered summary documents of revenue and costs but no accounting records.[47]

█████ offer of █████ as a source of accounting records proved hollow. █████ and StemExpress' counsel, who also represented former employee █████ explained that █████ had only W-2's and related tax information. In a teleconference with Congressional staff, █████ stated that she had no documents and that if the Panel contacted her again she would call the police.[48]

On April 29, 2016, the Panel issued a subpoena to Scinto.[49] Scinto refused to comply with the Panel's subpoena and produced no documents. Scinto told the Panel that StemExpress objected

---

[41] See StemExpress, Third Response to House Select Investigative Panel Subpoena, Apr. 11, 2016. [STEM.HOUSE.SELECT_0667].
[42] See Letter from Amandeep S. Sidhu, McDermott Will & Emery, to T. March Bell, Chief Counsel and Staff Director, House Select Investigative Panel (Mar. 18, 2016), at 1; Letter from Amandeep S. Sidhu, McDermott Will & Emery, to Rep. Blackburn, Chairman, House Select Investigative Panel (May 6, 2016), at 2.
[43] See StemExpress, Third Response to House Select Investigative Panel Subpoena, Apr. 11, 2016. [STEM.HOUSE.SELECT_0667].
[44] Center for Effective Government website, www.FedSpending.org.
[45] "StemExpress First Response to House Select Panel's March 29, 2016 Subpoena," at 2-3.
[46] "StemExpress First Response to House Select Panel's March 29, 2016 Subpoena," at 2-3.
[47] "StemExpress First Response to House Select Panel's March 29, 2016 Subpoena," at 1-2.
[48] Memorandum from House Select Investigative Panel Counsel to Majority Members of the House Select Investigative Panel, Mar. 7, 2016.
[49] Subpoena to Scinto Group, LLP, (Apr. 29, 2016). The subpoena required the production of:

1) All communications and documents referring or relating to StemExpress, LLC, or StemExpress Foundation (collectively known as "StemExpress").

2) Documents sufficient to show all institutions or entities to which StemExpress donated or provided fetal tissues for the following years: 2010, 2011, 2012, 2013, 2014 and 2015.

to Scinto's compliance with the Panel's subpoena on the grounds of several privileges.[50] The Panel informed Scinto its objections based upon the asserted privileges, were inapplicable and do

> ... 3) Copies of all invoices (by month and year), reflecting the billing that StemExpress issued to all institutions or entities to which StemExpress donated or provided fetal tissues for the following years: 2010, 2011, 2012, 2013, 2014 and 2015.
>
> 4) Documents sufficient to show all institutions or entities from which StemExpress obtained fetal tissues for the following years: 2010, 2011, 2012, 2013, 2014 and 2015.
>
> ... 5) Copies of all invoices (by month and year) reflecting the billing or payment of funds for fetal tissues obtained by StemExpress for the following years: 2010, 2011, 2012, 2013, 2014 and 2015.
>
> 6) A copy of any chart of accounts for StemExpress, including but not limited to account descriptions from any financial recording system relating to StemExpress.
>
> 7) StemExpress' end of year trial balance report and trial balance details for the following years: 2010, 2011, 2012, 2013, 2014 and 2015.
>
> 8) All documents reflecting StemExpress' statement of revenues (i.e., a breakdown by product categories) for the following years: 2010, 2011, 2012, 2013, 2014 and 2015.
>
> 9) All documents reflecting StemExpress' record of costs and expenses (i.e., a breakdown by operations, including fetal tissue acquisition) for administrative costs and expenses as well as compensation and benefits, for the following years: 2010, 2011, 2012, 2013, 2014 and 2015. Where applicable, records should include identification of vendors and descriptions of expenses.
>
> 10) StemExpress' balance sheets for the following years: 2010, 2011, 2012, 2013, 2014 and 2015. Audited statements should be provided, if available.
>
> 11) StemExpress' income statements, including but not limited to any profit and loss statements, statements of operations and statements of activities for the following years: 2010, 2011, 2012, 2013, 2014 and 2015. Audited statements should be provided, if available.
>
> 12) Copies of Stem Express' filed tax returns for the following years: 2010, 2011, 2012, 2013, 2014 and 2015.
>
> 13) All StemExpress bank statements from any financial institution where StemExpress has maintained an account for the following years: 2010, 2011, 2012, 2013, 2014 and 2015.
>
> 14) Documents sufficient to show how StemExpress calculates the cost of a fetal tissue and all factors applied in determining pricing of fetal tissue. In lieu of these documents, you may provide a written explanation.
>
> 15) Documents sufficient to show StemExpress' cost of production and revenue from the following products: CD34+StemlProgenitor Cells; CD36+ Erythroid Progenitor; CD 133+ Stem/ Progenitor Cells; Fetal Fiver Mononuclear Cells. (Schedule).

[50] *See* email from Kevin Murphy, counsel for Scinto Group LLP, to House Select Investigative Congressional staff (Jun. 15, 2016) ("StemExpress has now told me definitively that it does not waive any available and applicable privileges or confidentiality rights in regard to the records related to StemExpress that are in the possession of my client, Scinto, and that StemExpress holds Scinto accountable to observe and protect those privileges and confidentiality rights. As you know, because Scinto is a CPA firm and tax preparer for StemExpress, there are potentially applicable privileges and confidentiality statutes, under the Internal Revenue Code and related provisions, under the California Business & Professions Code and Tax Code, and under professional standards. I understand that you probably do not agree that any of those laws or provisions would ultimately be found by a court to be applicable, but from our reading of the laws and provisions, we believe that the privilege and confidentiality

8