# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| PLANNED PARENTHOOD GULF COAST, INC.; PLANNED PARENTHOOD CENTER FOR CHOICE; JANE DOE #1; JANE DOE #2; and JANE DOE #3,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>REBEKAH GEE, in her official capacity as Secretary of the Louisiana Department of Health,<br><br>　　　　　　　Defendant. | No. 3:18-cv-00176-JWD-RLB |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### INTRODUCTION

Plaintiffs Planned Parenthood Gulf Coast, Inc. ("PPGC"), Planned Parenthood Center for Choice ("PPCfC"), and the Patient Plaintiffs have pleaded justiciable claims arising from the Defendant's refusal to grant PPCfC's abortion license application and a statute precluding PPGC from receiving Medicaid funding when PPCfC is licensed. Defendant insists that the Court cannot adjudicate Plaintiffs' claims until the Louisiana Department of Health ("LDH") renders a final decision on PPCfC's application, a decision that LDH concedes it will not make so long as any authority anywhere is investigating a provider affiliated with Planned Parenthood for any conceivable violation of the law, no matter the investigation's merits. Deferring resolution of this case will not sharpen the legal issues for review and, in the meantime, Plaintiffs and the women of Louisiana will continue to suffer serious hardship. Accordingly, Plaintiffs' well-pleaded claims are ripe and should be adjudicated forthwith.

## ARGUMENT

### I. Plaintiffs' License-Related Claims Are Justiciable.

LDH will continue to stall until this Court orders it to act, rendering Plaintiffs' license-related claims ripe for review now. Each day that LDH delays, it exacerbates obstacles to abortion access in Louisiana and impairs Plaintiffs' rights under federal law. Neither the *Burford* abstention doctrine nor Defendant's premature and unfounded concerns about the scope of an injunction deprive the Court of jurisdiction to adjudicate Plaintiffs' ripe federal claims.

### A. The License Claims Are Ripe.

The "key considerations" of ripeness are the "fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Roark & Hardee LP* v. *City of Austin*, 522 F.3d 533, 545 (5th Cir. 2008) (quotations omitted). LDH has repeatedly confirmed that it will indefinitely delay rendering a formal decision on PPCfC's application. Therefore, withholding judicial review at this time will not clarify the legal issues and will only make the situation worse for the women of Louisiana.

As to the first consideration, fitness of the issues for judicial decision, Defendant urges the Court to wait until LDH issues a formal decision on PPCfC's application. Def.'s Mem. 9-10. But Defendant ignores Plaintiffs' allegation that LDH has constructively denied PPCfC's application by refusing to act on it. Compl. ¶ 74. Despite acknowledging that PPCfC has "the right to have some end to" the investigation, Defendant admits there is no end in sight. Status Conference Tr. 6:8, Mar. 5, 2018 (ECF No. 34). Specifically, Defendant avows that so long as *any* authority is investigating *any* provider associated with Planned Parenthood for *any* reason, LDH will not end its investigation and issue PPCfC a license, even though Defendant concedes that PPCfC has satisfied every other licensing requirement.[1] Def.'s Mem. at 4-5, 10-11, 16.

---

[1] Defendant misstates the facts when she asserts that LDH could have cancelled PPCfC's application due to a supposed five-month delay in responding to LDH's letter requesting additional information. Def.'s Mem. at 4. In fact, LDH agreed to toll the deadline to respond during the review of PPCfC's materials by the Office of the State Fire Marshal, and PPCfC's application was completed within the ninety-day deadline. *See* Linton Decl. ¶¶ 2-4, Apr. 12, 2018 (submitted herewith).

Defendant maintains this position even though the only investigation that is even pending in Louisiana (a confidential investigation by the state Attorney General that was commenced some six months *after* LDH's June 2017 letter) concerns PPGC, and not PPCfC, which is the actual applicant. *Id.* at 6-7; Magee Decl. ¶ 3. Defendant further concedes that the other "investigations" into Plaintiffs are being conducted by *other* entities and in *other* jurisdictions. Def.'s Mem. at 6-7. Consequently, LDH has no way of controlling how long those investigations into Plaintiffs will last and, in some instances, does not even know what the allegations entail.[2] *See* Castello Decl. ¶ 18 (admitting Texas "was unable to provide further details about the investigation"). Those investigations, moreover, involve mere allegations of wrongdoing; they have not yielded any findings that Plaintiffs are "in violation" of any law, as is required to deny the application. La. Rev. Stat. § 40:2175.6(G); *see* Def.'s Mem. at 5 (recognizing any violations are only "potential"); Castello Decl. ¶ 19 (same). These facts underscore the pretextual and unjustified nature of LDH's delay. *See* Compl. ¶¶ 38-42, 63-71 (documenting politically motivated obstruction and fruitless investigations). Yet LDH intends to continue to refuse to make a decision on PPCfC's application anytime soon (and possibly ever). In light of these facts, there is no reason to wait to adjudicate the "legal question that towers over this case," namely, whether Defendant's refusal to act on PPCfC's application violates the Constitution. *Am. Forest & Paper Ass'n v. U.S. E.P.A.*, 137 F.3d 291, 297 (5th Cir. 1998).

Moving to the second ripeness consideration, there are "strong reason[s] why [PPCfC] must bring its challenge now." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 734 (1998). As alleged in the Complaint, Defendant's indefinite delay is currently causing PPCfC and its patients to suffer serious hardship. *See* Compl. ¶¶ 75-97; *contra* Def.'s Mem. at 11 ("[N]o hardship to Plaintiffs can inure from waiting."). In other words, PPCfC and its patients have already and "immediately" felt "the impact" of LDH's inaction "in conducting their day-to-day

---

[2] LDH *does* know that no investigation into Plaintiffs in Louisiana could possibly be "related to an abortion or abortion procedures," La. Admin. Code § 48:4403(C), because Plaintiffs do not provide abortions in Louisiana, *see* Linton Decl. ¶ 11, Feb. 21, 2018 (ECF No. 3-3).

affairs." *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, 141 F. Supp. 3d 604, 627 (M.D. La. 2015), *aff'd sub nom. Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445 (5th Cir. 2017) (quoting *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164 (1967)). For instance, LDH has left PPCfC unable to fulfill its mission of providing abortions to women in need, a mission it has invested considerable resources into advancing. *See, e.g.*, Compl. ¶¶ 33-44. And each day that PPCfC is blocked from providing abortions, its patients face substantial obstacles in accessing much needed and constitutionally protected care—obstacles that a licensed PPCfC will lift. *See id.* ¶¶ 75-97. Indeed, the situation has grown more precarious since this suit was filed, as the sole abortion provider in New Orleans has had to cut back critical services. *See* Linton Decl. ¶ 6. For those reasons, PPCfC's substantive due process claim is ripe.

        Defendant does not—and could not—contest the ripeness of Plaintiffs' other claims. Plaintiffs have also pleaded that Defendant has violated PPCfC's rights to equal protection and procedural due process by singling PPCfC out for unfavorable treatment based solely on animus toward abortion and by depriving PPCfC of the procedural protections it is due. Compl. ¶¶ 119-20, 125-26. PPCfC has suffered—and will continue to suffer—harms flowing from these violations regardless of whether it ultimately receives a license. *See, e.g.*, *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) ("When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit . . . [t]he 'injury in fact' . . . is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.").

        Defendant is therefore wrong to contend that this Court cannot act until LDH formally denies PPCfC's application. Def.'s Mem. 9-10. It makes no difference that LDH has injured PPCfC and its patients through deliberate inaction as opposed to direct action. The "key question" is whether the plaintiff is the "object" of the government action "*or forgone action*" at issue. *Duarte ex rel. Duarte v. City of Lewisville*, 759 F.3d 514, 517-18 (5th Cir. 2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992)) (emphasis added). Thus, in *Ohio Forestry*, the Supreme Court explained that an agency's decision to "grant, *withhold*, or modify

4

any formal legal license" creates hardship sufficient to render a case ripe for review. 523 U.S. at 733 (emphasis added); *see also Kliebert*, 141 F. Supp. at 627 (quoting this language). Although Defendant cites (at 11) *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710 (5th Cir. 2012), in support of its position, *Choice Inc.* confirms that "withholding the license itself" can cause a "sufficient" harm. *Id.* at 717. PPCfC has "imminent" and "concrete plans" to open an abortion clinic, which LDH has disrupted by withholding the license PPCfC is lawfully due. *Lujan*, 504 U.S. at 564. In so doing, LDH has prevented women from accessing critical abortion care and created ripe injuries.

Separately, Defendant tacitly admits what Plaintiffs have alleged, *i.e.*, that LDH has constructively denied PPCfC's application. LDH has decided to "pretermit its licensing decision." Def.'s Mem. at 10. Pretermit means "to suspend indefinitely." *Merriam-Webster's Collegiate Dictionary* (11th ed. 2014). Just as in *Groome Res. Ltd., LLC v. Parish of Jefferson*, in doing so, LDH has created an "indeterminate delay" that prevents PPCfC from receiving its license, producing the "same effect as an outright denial" of its application. 234 F.3d 192, 199 (5th Cir. 2000) (explaining that denials "can be both actual or constructive" and holding that a town's failure to act on an application for a zoning variance after only ninety-five days was a constructive denial ripe for review). Common sense confirms that a defendant cannot avoid suit "by the simple expedient of delaying action on an application." *Merrill v. Agnesian Healthcare, Inc.*, No. 07-C-938, 2009 WL 440942, at *4 (E.D. Wis. Feb. 23, 2009) (jury could conclude that hospital denied application by refusing to grant it). Through indefinite—and potentially unending—delay, LDH has constructively denied PPCfC's application and in this manner has also created a ripe injury.[3]

None of the cases Defendant cites (at 9) are to the contrary. The challenge in *Monk v. Huston*, 340 F.3d 279, 281-83 (5th Cir. 2003), was unripe because the homeowners trying to stop an agency from issuing a permit for a nearby landfill would not be injured unless the agency

---

[3] Whether this delay is justified is a merits question that has no bearing on the ripeness of Plaintiffs' claims. *See Gee*, 862 F.3d at 455 (rejecting LDH's attempt "to bootstrap" a substantive question into the justiciability inquiry).

issued the permit. Here, by contrast, LDH has already injured PPCfC and its patients—who are the object of the regulation, not third parties like the *Monk* homeowners—through its inaction and constructive denial. *Bova v. City of Medford*, 564 F.3d 1093 (9th Cir. 2009), and *Oil, Chemical & Atomic Workers Int'l Union AFL-CIO v. Gillette Co.*, 905 F.2d 1176 (8th Cir. 1990), are inapposite because the claims there were unripe *not* because the plaintiffs had not yet received a decision on their applications for retirement benefits, but because the plaintiffs in each case had not yet applied for the benefits; indeed, they had not retired. 564 F.3d at 1096-97; 905 F.2d at 1177. Finally, the unpublished decision in *Lawrence v. Chabot*, 182 F. App'x 442, 455 (6th Cir. 2006), turned largely on the fact that the state was criminally prosecuting a lawyer while it waited to adjudicate his application to the bar. In contrast to those three cases, Plaintiffs have specifically alleged that the cost of further delay to women's health and dignity is enormous and unwarranted. Compl. ¶¶ 79-97.

### B. *Burford* Abstention Is Not Appropriate.

Because federal courts have a "virtually unflagging" "obligation" to exercise their jurisdiction, "only exceptional circumstances" justify abstention. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans (NOPSI)*, 491 U.S. 350, 359, 368 (1989) (quotations omitted). Thus, a court may abstain under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), only "[w]here timely and adequate state-court review is available." *NOPSI*, 491 U.S. at 361; Def.'s Mem. at 12 (acknowledging this is a "threshold standard for *Burford* abstention"). Defendant argues that LDH has not issued a final decision on PPCfC's application yet demands that PPCfC avail itself of mechanisms of state-court review that require a final decision or denial. Def.'s Mem. at 9, 12. Section 49:964 of the Louisiana Revised Statutes applies only when there has been a "final decision or order;" § 40:2175.6(G) applies only when a license is denied, revoked, or not renewed; and § 49:992(D)(2)(b)(vi) applies only when a license is denied, revoked, or suspended. *Contra* Def.'s Mem. at 15. By Defendant's own account, it is thus unclear whether

6

state-court review is "available."[4]

Even were state review available here, the remaining *Burford* factors counsel against abstention. Def.'s Mem. at 12, 13 (listing the factors). As to the first factor, "the cause[s] of action arise[] under federal law," not state law. *Romano v. Greenstein*, 721 F.3d 373, 380 (5th Cir. 2013) (rejecting LDH's invocation of *Burford* abstention in a Medicaid case); *see* Compl. ¶¶ 117-26.

Second, this case does not "require[] inquiry into unsettled issues of state law, or into local facts." *Romano*, 721 F.3d at 380 (quotations omitted). Plaintiffs do not challenge LDH's authority to regulate abortion providers or issue licenses, only whether Defendant has violated the U.S. Constitution by refusing to issue PPCfC a license. The simple fact that a license is at issue does not justify abstention. *See Hachamovitch v. DeBuono*, 159 F.3d 687 (2d Cir. 1998) (rejecting *Burford* abstention in § 1983 action by a physician challenging license-suspension procedures); *contra* Def.'s Mem. at 13. Nor are Plaintiffs challenging Defendant's interpretation of state law or regulations. The only question is whether application of those laws and regulations is constitutional. Courts do not defer to states on that question. *See Whole Woman's Health v. Hellderstedt*, 136 S. Ct. 2292, 2309-10 (2016).[5]

Third, the state's interest in regulating abortion providers does not override the Plaintiffs' "paramount" interest in vindicating their federal rights. *Romano*, 721 F.3d at 380. Federal courts routinely enjoin state officials from regulating abortion in ways they claim promote women's health and respect for potential life.[6] If anything, LDH has abdicated its purported sovereign

---

[4] The lack of a formal, final decision does not prevent *this* Court from reviewing Plaintiffs' claims because federal courts recognize that constructive denials constitute ripe injuries, *see Groome*, 234 F.3d at 199, and because plaintiffs in § 1983 actions need not exhaust state administrative remedies, *Romano v. Greenstein*, 721 F.3d 373, 376 (5th Cir. 2013).

[5] Defendant raises the potential applicability of the deliberative-process privilege as another reason to abstain. Def.'s Mem. at 14. But that is merely a discovery issue and, in any event, Defendant has waived the privilege by voluntarily disclosing internal deliberations in the memorandum and attached declarations. *Id.* at 5-7.

[6] *See, e.g.*, *Whole Woman's Health*, 136 S. Ct. at 2300, 2320 (remanding for lower courts to enjoin two purportedly health-related regulations of abortion providers); *Planned Parenthood of Dutchess-Ulster, Inc. v. Steinhaus*, 60 F.3d 122, 127 (2d Cir. 1995) (vacating decision abstaining under *Burford* where a Planned Parenthood affiliate claimed officials violated its federal constitutional rights by denying it the opportunity to compete for a government contract due to its support for abortion rights).

interests by outsourcing its investigations to other jurisdictions.

Fourth, review of a single licensing decision would not undermine any "coherent policy" in this area. *Id.* Louisiana regulates abortion through numerous independent regulations, most of which are not at issue here. *See* Compl. ¶ 78. Even if all the regulations were implicated here, the Court need not abstain "merely because resolution of a federal question may result in the overturning of a state policy.'" *NOPSI*, 491 U.S. at 363 (quotations omitted). Finally, as discussed above, there is no "special state forum for judicial review" of LDH's non-decision. *Romano*, 721 F.3d at 380; *see supra* at 6.

### C. This Court Has Jurisdiction To Award the Relief Plaintiffs Seek.

Defendant's concerns about the appropriate scope of any future injunctive relief (Def.'s Mem. at 15-17) are unfounded.[7] First, there is no need for the Court to determine the appropriate scope of an injunction before it has even adjudicated the merits. *See Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies.").

In any event, the Court has ample authority to award any of the relief—declaratory and injunctive—Plaintiffs seek. Federal courts routinely award injunctive relief in similar circumstances. *See, e.g.*, *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328 (5th Cir. Unit B Nov. 1981) (reversing the denial of preliminary injunction of a city's refusal to issue an occupational license to an abortion facility); *Comprehensive Health of Planned Parenthood Great Plains v. Williams*, 263 F. Supp. 3d 729, 738 (W.D. Mo. 2017) (preliminarily enjoining requirements preventing the opening of new abortion clinics, noting injunctive relief altering the status quo was appropriate because "[t]he abortion rights of Missouri women, guaranteed by constitutional rulings, are being denied on a daily basis, in irreparable fashion"). Indeed, many of

---

[7] Defendant focuses on Plaintiffs' request for an order requiring LDH to issue the license. Def.'s Mem. at 15-17. However, Plaintiffs actually seek alternative forms of injunctive relief, including an order that merely directs LDH to make a prompt decision on the application. *See* Compl. ¶ 128.

8

our country's most important decisions have required state officials to comply with federal law, even when doing so was inconsistent with state law. *See, e.g.*, *Brown v. Board of Educ.*, 347 U.S. 483 (1954).

Finally, Defendant contends that this Court cannot award Plaintiffs relief on their licensing claims because "the rights that Plaintiffs assert derive only from State law." Def.'s Mem. at 16. In fact, all of PPCfC's rights are rooted in the federal Constitution—including the right to abortion, which PPCfC may assert on behalf of its patients. *See Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott*, 748 F.3d 583, 589 (5th Cir. 2014); *contra* Def.'s Mem. at 16. Plaintiffs have not asserted any state law claims. *See* Compl. ¶¶ 117-26. For that reason, Defendant's reliance on *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106 (1984), which merely prevents federal courts from "grant[ing] . . . relief against state officials on the basis of state law," is misplaced.[8]

## II. Plaintiffs' Act-Related Claims Are Justiciable.

Defendant is wrong in arguing that Plaintiffs' HB 606 claims are not justiciable on standing and ripeness grounds because the act does not yet apply to PPGC. It is "well-established . . . that a threatened injury may be sufficient to establish standing." *Gee*, 862 F.3d at 455; *see Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) ("An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." (quotations omitted)).

"Mere threatened injury is sufficient, and the threat in this case is real." *Loa-Herrera v. Trominski*, 231 F.3d 984, 988 (5th Cir. 2000). PPCfC has applied for a license to provide abortion services; only Defendant's unconstitutional conduct prevents PPCfC from obtaining it. The moment PPCfC receives the license, HB 606 will apply to PPGC. And there is no doubt Defendant will enforce the act: Defendant has already attempted (unsuccessfully) to terminate

---

[8] The other cases Defendant cites are equally inapposite. In *Fairley v. Louisiana*, 254 F. App'x 275, 277-78 (5th Cir. Sept. 11, 2007) (per curiam), the plaintiff had no viable federal claims and was advancing a theory under state law. And in *Lelsz v. Kavanagh*, 807 F.2d 1243, 1247-48 (5th Cir. 1987), as in *Pennhurst*, the plaintiffs were seeking to enforce rights that arose from state, not federal law.

9

PPGC's Medicaid provider agreements, *see Gee*, 862 F.3d 445, and the Legislature openly tailored HB 606 to target PPGC, *see* Compl. ¶ 10. *See Susan B. Anthony List*, 134 S. Ct. at 2345 ("[P]ast enforcement against the same conduct is good evidence that the threat of enforcement is not chimerical." (quotations omitted)); *Pearson v. Holder*, 624 F.3d 682, 684 (5th Cir. 2010) ("Where the inevitability of the operation of a statute against certain individuals is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into effect." (quoting *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 143 (1974))). Here, the threat is real and inevitable. Forcing Plaintiffs to wait until PPCfC succeeds on its license-related claims before PPGC and the Patient Plaintiffs can pursue their Medicaid-defunding claims will only result in relitigation of overlapping legal issues and needless delay in the resolution of this case.

Finally, there is no basis to transfer or stay this action in light of *June Medical Servs. LLC v. Gee*, No. 3:16-cv-444 (M.D. La), or *Gee*, 862 F.3d 445. Unlike Plaintiffs, the *June* plaintiffs have not alleged that HB 606 violates the federal Medicaid statute, 42 U.S.C. 1396a(a)(23). And the proposed amendment to HB 606 that Defendant cites may moot the HB 606 claim in *June*, but not this case. And there is no cause to even consider holding this case for *Gee* unless the Supreme Court grants Defendant's petition for certiorari. A stay is particularly inappropriate given Plaintiffs' pending request for a preliminary injunction, which is necessary to halt ongoing and irreparable harm.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss should be denied.

Dated: April 18, 2018

/s/ Brandon H. Robb

Brandon H. Robb, Bar # 31942 (Lead Attorney)
Andrea L. Rubin, Bar # 31950
DELANEY, ROBB & RUBIN ATTORNEYS AT LAW, LLC
2800 Veterans Blvd., Suite 213

Metairie, LA 70005
Phone: (504) 267-9700
Fax: (504) 267-9701
brandon@delaneyrobb.com
andrea@delaneyrobb.com

Carrie Y. Flaxman (*pro hac vice*)
PLANNED PARENTHOOD FEDERATION OF AMERICA
1110 Vermont Ave., NW, Suite 300
Washington, DC 20005
(202) 973-4830
carrie.flaxman@ppfa.org

Jennifer Keighley (*pro hac vice*)
PLANNED PARENTHOOD FEDERATION OF AMERICA
123 William St.
9th Floor
New York, NY 10038
(212) 261-4749
jennifer.keighley@ppfa.org

Amy Van Zant (*pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Blvd.
Menlo Park, CA 94025
(650) 614-7403
avanzant@orrick.com

Mark P. Wine (*pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
2050 Main St., Suite 1100
Irvine, CA 92614
(949) 852-7704
mwine@orrick.com

*Attorneys for Plaintiffs*
*Planned Parenthood Gulf Coast, Inc., Planned Parenthood Center for Choice, Jane Doe #1, Jane Doe #2, and Jane Doe #3*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of April, 2018, a copy of the foregoing has been served upon all counsel of record in this action by electronic service through the Court's CM/ECF system.

*/s/ Brandon H. Robb*
Brandon H. Robb